UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ZAHID KHAN,

                          Petitioner,

          v.

RON HAYNES,

                          Respondent.

Case No. C20-125-JCC-MLP

REPORT AND RECOMMENDATION

## I.    INTRODUCTION AND SUMMARY CONCLUSION

Petitioner Zahid Khan is a Washington prisoner who is currently confined at the Stafford Creek Corrections Center ("SCCC"). Petitioner, through counsel, has submitted to this Court for consideration a petition for writ of habeas corpus under 28 U.S.C. § 2254 seeking relief from a 2008 Snohomish County Superior Court judgment and sentence. (Dkt. # 1.) Respondent has filed an answer responding to Petitioner's federal habeas petition and has submitted relevant portions of the state court record. (Dkt. ## 9, 10.) Petitioner has filed a response to Respondent's answer (dkt. # 13), and Respondent has filed a reply to Petitioner's response (dkt. # 14). This Court, having carefully reviewed Petitioner's petition for writ of habeas corpus, all briefing of the

REPORT AND RECOMMENDATION
PAGE - 1

parties, and the balance of the record, concludes that the petition should be denied and this action

should be dismissed with prejudice.

## II.    FACTUAL BACKGROUND

The Washington Court of Appeals, on direct appeal, summarized the facts underlying

Petitioner's convictions as follows:

> On July 16, 2007, Eram Mirza and her husband Zahid Khan were hosting various family members in town for a celebration. The couple's seven-year-old son, R.K., and six-year-old daughter, M.K., slept on the floor of the second floor loft close to Mirza's 14-year-old daughter, R.H., who slept on the couch. Following incidents that occurred that night, the State charged Khan with second degree child molestation, second degree rape of a child, third degree rape of a child, third degree child molestation and attempted third degree child molestation. All the charges involved R.H.

> At trial, R.H. testified that shortly after the family moved to Bothell in September 2004, while the children were still sleeping on mattresses on the floor, she awoke to find Khan squeezing her breasts. In August 2006, after she fell asleep on the loft couch while watching television, she awoke to Khan kneeling next to the couch and moving his finger in and out of her anus. On another occasion, when she was 13 or 14, she was sleeping on her bed in her room when she was awakened by Khan moving his finger in and out of her vagina. She testified that Khan had touched her several other times and that she was afraid to tell anyone because he threatened her and bought her gifts to keep her from telling her mother. At last, in July 2007, when she woke up on the couch and saw him reaching for her chest, she called out to her mother because she believed that her visiting family members would help her.

> Mirza testified that on July 16, after Khan was asleep in his bedroom and the children were asleep in the loft, she and her sister Sanober went down the street to visit her sister. Mirza and Sanober both testified that when they returned after midnight, they heard R.H. call out, "Mom, Mom. Where are you?" As they started quickly up the stairs, they heard Khan say, "Shut up. Shut up. What's your problem?" When they reached the loft, they saw Khan, with a full erection, standing near the couch where R.H. sat, crying. Mirza testified that she took R.H. downstairs where R.H. said, "its been happening for a long time."

> Mirza testified that she sent R.H. to California with Sanober and her husband the next morning. A few days later, after the remaining relatives left, Mirza contacted Child Protective Services (CPS). CPS reported the call to police. In early August, R.H. returned to Washington and provided statements.

REPORT AND RECOMMENDATION
PAGE - 2

Khan denied touching R.H. He testified that R.H. was rebelling against him for his strict rules based on his Muslim faith. He claimed that on the night in July 2007, he was merely covering his daughter M.K. with a blanket when R.H. started yelling and that he did not have an erection.

The jury found Khan guilty as charged and the trial court imposed a standard range sentence.

(Dkt. # 10, Ex. 12 at 1-3.)

### III.    PROCEDURAL BACKGROUND

Petitioner appealed his convictions to the Washington Court of Appeals and, on April 20, 2009, the court of appeals issued an unpublished opinion affirming the convictions. (*See id*., Exs. 7-12.) Petitioner subsequently filed a motion for reconsideration which was denied by the court of appeals on May 29, 2009. (*Id*., Exs. 13, 14.) Petitioner thereafter filed a petition for review in the Washington Supreme Court. (*Id*., Ex. 15.) The supreme court denied Petitioner's petition for review without comment on November 5, 2009, and the court of appeals issued a mandate terminating direct review on December 4, 2009. (*Id*., Exs. 16, 17.)

On December 3, 2010, Petitioner, through counsel, filed a personal restraint petition in the Washington Court of Appeals. (*Id*., Ex. 18.) Petitioner identified eight claims in his petition: (1) his constitutional rights to due process, to equal protection, to be present, to counsel, to confrontation, and to a fair trial were denied when he was not provided an interpreter; (2) his right to effective assistance of counsel was denied when trial counsel failed to request appointment of an interpreter; (3) his right to effective assistance of counsel was violated when trial counsel failed to move for a curative instruction and a mistrial in response to the prosecutor's cross-examination of Petitioner; (4) his right to effective assistance of counsel was violated when trial counsel failed to retain an expert to testify regarding the victim's lack of injury; (5) his right to effective assistance of counsel was violated when counsel failed to

REPORT AND RECOMMENDATION
PAGE - 3

investigate and present testimony concerning the motive to fabricate charges against Petitioner; (6) his right to an open and public trial was violated through the use of juror questionnaire forms that were confidential and were placed under seal; (7) his right to effective assistance of counsel was violated when counsel failed to advise him about his right to an open and public trial; and (8) his right to effective assistance of counsel was violated when appellate counsel failed to assign error to the use of private juror questionnaires. (*See id*. at 4-39.) On November 13, 2013, the acting chief judge of the court of appeals issued an order dismissing Petitioner's personal restraint petition. (*Id*., Ex. 24.)

Petitioner next filed a motion for discretionary review with the Washington Supreme Court in which he identified three issues for review: (1) trial counsel rendered ineffective assistance when he failed to request appointment of an interpreter; (2) the prosecutor's cross-examination of Petitioner was flagrant and improper, and Petitioner's trial counsel was ineffective for failing to move for a curative instruction and a mistrial; and (3) trial counsel rendered ineffective assistance when he failed to retain an expert witness to testify regarding the victim's lack of physical injury. (*Id*., Ex. 25 at 6-21.) Petitioner urged the supreme court to accept review and to remand the case for an evidentiary hearing. (*Id*., Ex. 25 at 6.)

The supreme court accepted review with respect to all issues asserted in the motion for discretionary review and, on November 25, 2015, issued a 5-4 opinion remanding the case for a reference hearing on Petitioner's ineffective assistance of trial counsel claim pertaining to counsel's failure to obtain an interpreter, and upholding the dismissal of Petitioner's remaining claims. (*See id*., Exs. 28, 30, 35.) The reference hearing was conducted by the Skagit County Superior Court in October 2017. (*See id.*, Exs. 36-38.) After taking the testimony of multiple witnesses, hearing the arguments of counsel, and reviewing the transcript of Petitioner's trial

REPORT AND RECOMMENDATION
PAGE - 4

which was admitted as an exhibit at the hearing, the superior court denied Petitioner's personal

restraint petition, concluding that Petitioner had not established he was prejudiced by the lack of

an interpreter. (*Id.*, Exs. 39-40.)

Petitioner appealed the superior court's order to the Washington Court of Appeals and, on

November 12, 2019, the court of appeals issued an unpublished opinion affirming the denial of

Petitioner's personal restraint petition on the grounds that substantial evidence supported the

superior court's finding that Petitioner was not prejudiced by the lack of an interpreter. (*Id.*, Exs.

41-44.) Petitioner sought discretionary review by the Washington Supreme Court, and the

supreme court denied review without comment on March 4, 2020. (*Id.*, Exs. 45, 47.) The court of

appeals issued a mandate terminating review on April 8, 2020. (*Id.*, Ex. 48.) Petitioner now seeks

federal habeas review of his convictions.[1]

## IV.    GROUNDS FOR RELIEF

Petitioner identifies a single ground for relief in his federal habeas petition:

Mr. Khan was denied his Sixth and Fourteenth Amendment right to effective
assistance of counsel when trial counsel failed to request an interpreter and where
Khan's credibility was significantly damaged at trial due to his lack of English
fluency.

(Dkt. # 1 at 12-13.)

## V.    DISCUSSION

Respondent concedes that Petitioner properly exhausted his ineffective assistance of trial

counsel claim by fairly presenting the claim to the Washington Supreme Court in his personal

---

[1] Though not relevant to these proceedings, the Court notes that Petitioner also filed in the superior court a motion pursuant to CrR 7.8 seeking to vacate two of his counts of conviction on the grounds that venue in Snohomish County was improper. (Dkt. # 10, Ex. 49.) That motion was transferred to the court of appeals for consideration as a personal restraint petition and was dismissed as untimely in November 2013. (*See id*, Exs. 50-53.)

REPORT AND RECOMMENDATION
PAGE - 5

restraint proceeding (dkt. # 10, Ex. 25), and in his petition for review from the denial of his

personal restraint petition (*id*., Ex. 45). (Dkt. # 9 at 6-7.) Respondent argues, however, that the

claim was reasonably adjudicated by the Washington Court of Appeals, and that Petitioner's

federal habeas petition should be dismissed. (*Id*. at 11-22.)

A.    **Standards of Review**

1.    *Federal Habeas Standard, 28 U.S.C. § 2254*

Federal habeas corpus relief is available only to a person "in custody in violation of the

Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A habeas corpus

petition may be granted with respect to any claim adjudicated on the merits in state court only if

the state court's decision was contrary to, or involved an unreasonable application of, clearly

established federal law, as determined by the United States Supreme Court, or if the decision was

based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C.

§ 2254(d).

Under the "contrary to" clause, a federal habeas court may grant the writ only if the state

court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law,

or if the state court decides a case differently than the Supreme Court has on a set of materially

indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the

"unreasonable application" clause, a federal habeas court may grant the writ only if the state

court identifies the correct governing legal principle from the Supreme Court's decisions, but

unreasonably applies that principle to the facts of the prisoner's case. *See id*. at 407-09.

The Supreme Court has made clear that a state court's decision may be overturned only if

the application is "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 69 (2003). The

Supreme Court has also explained that "[a] state court's determination that a claim lacks merit

REPORT AND RECOMMENDATION
PAGE - 6

1  precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness

2  of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 88 (2011) (citing *Yarborough*

3  *v. Alvarado*, 541 U.S. 652, 664 (2004)).

4      Clearly established federal law means "the governing legal principle or principles set

5  forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer*, 538 U.S.

6  at 71-72. "If no Supreme Court precedent creates clearly established federal law relating to the

7  legal issue the habeas petitioner raised in state court, the state court's decision cannot be contrary

8  to or an unreasonable application of clearly established federal law." *Brewer v. Hall*, 378 F.3d

9  952, 955 (9th Cir. 2004) (citing *Dows v. Wood*, 211 F.3d 480, 485-86 (9th Cir. 2000)).

10     In considering a habeas petition, this Court's review "is limited to the record that was

11 before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S.

12 170, 181-82 (2011). If a habeas petitioner challenges the determination of a factual issue by a

13 state court, such determination shall be presumed correct, and the applicant has the burden of

14 rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. §

15 2254(e)(1).

16              2.    *Ineffective Assistance of Counsel Standard*

17     The Sixth Amendment guarantees a criminal defendant the right to effective assistance of

18 counsel. *Strickland v. Washington*, 466 U.S. 668 (1984). "The essence of an ineffective-

19 assistance claim is that counsel's unprofessional errors so upset the adversarial balance between

20 defense and prosecution that the trial was rendered unfair and the verdict rendered suspect."

21 *Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986). Claims of ineffective assistance of counsel

22 are evaluated under the two-prong test set forth in *Strickland*. Under *Strickland*, a defendant must

23

REPORT AND RECOMMENDATION
PAGE - 7

1  prove (1) that counsel's performance was deficient and, (2) that the deficient performance

2  prejudiced the defense. *Strickland*, 466 U.S. at 687.

3      With respect to the first prong of the *Strickland* test, a petitioner must show that counsel's

4  performance fell below an objective standard of reasonableness. *Id*. at 688. Judicial scrutiny of

5  counsel's performance must be highly deferential. *Id*. at 689. "A fair assessment of attorney

6  performance requires that every effort be made to eliminate the distorting effects of hindsight, to

7  reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from

8  counsel's perspective at the time." *Id*.

9      The second prong of the *Strickland* test requires a showing of actual prejudice related to

10  counsel's performance. In order to establish prejudice, a petitioner "must show that there is a

11  reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

12  would have been different. A reasonable probability is a probability sufficient to undermine

13  confidence in the outcome." *Id*. at 694. The reviewing court need not address both components

14  of the inquiry if an insufficient showing is made on one component. *Id*. at 697.

15      While the Supreme Court established in *Strickland* the legal principles that govern claims

16  of ineffective assistance of counsel, it is not the role of the federal habeas court to evaluate

17  whether defense counsel's performance fell below the *Strickland* standard. *Harrington*, 562 U.S.

18  at 101. Rather, when considering an ineffective assistance of counsel claim on federal habeas

19  review, "[t]he pivotal question is whether the state court's application of the *Strickland* standard

20  was unreasonable." *Id*. As the Supreme Court explained in *Harrington*, "[a] state court must be

21  granted a deference and latitude that are not in operation when the case involves review under

22  the *Strickland* standard itself." *Id*.

23

REPORT AND RECOMMENDATION
PAGE - 8

1

**B.      Analysis**

2      Petitioner asserts in his federal habeas petition that he was denied his constitutional right

3 to effective assistance of counsel when his trial counsel failed to request an interpreter for him.

4 (Dkt. # 1 at 13.) Petitioner claims that he was not fluent in the English language and that his

5 credibility was significantly damaged when he failed to understand and to accurately express

6 himself during his testimony at trial. (*Id*.) This issue was extensively litigated in the state courts,

7 and the state courts ultimately rejected the claim on the grounds that Petitioner failed to establish

8 prejudice attributable to the lack of an interpreter.

9      Petitioner first raised his ineffective assistance of counsel claim regarding his trial

10 counsel's failure to request an interpreter in his personal restraint petition. (Dkt. # 10, Ex. 18.)

11 Petitioner asserted therein that his native language was Urdu, that he was unable to readily

12 understand and communicate in English, and that he required the services of an interpreter at

13 trial. (*See id*., Ex. 18 at 3-15.) Petitioner, who testified at trial, claimed that his limited fluency in

14 English resulted in unfair attacks on his credibility, and he argued that reasonably competent

15 counsel would have sought the services of an interpreter. (*See id*.) The Washington Court of

16 Appeals rejected the claim, and Petitioner sought review in the Washington Supreme Court. (*Id*.,

17 Exs. 24-25.)

18      A majority of the supreme court concluded that Petitioner had not established prejudice

19 sufficient to meet the *Strickland* standard and observed that "[t]his is likely in part a consequence

20 of the high level of abstraction with which Khan is approaching this issue, rather than drilling

21 down into how the lack of an interpreter caused him prejudice by demonstrating what

22 specifically he would have done differently had he understood the proceedings or questions."

23 (*Id*., Ex. 35 at 12.) The majority nonetheless concluded that Petitioner had made a sufficient

REPORT AND RECOMMENDATION
PAGE - 9

showing to merit a reference hearing in order to develop the factual basis for his claim and, thus, remanded the case to the court of appeals for entry of an order transferring the petition to the superior court for such a hearing. (*Id.*, Ex. 35 at 1-2.) The majority explained its decision to remand the case as follows:

> Generously construing his arguments and based on our own review of the record, we find sufficient grounds to warrant a reference hearing on prejudice. For example, when Khan was questioned closely about his wife's testimony that he was standing over his stepdaughter with an erection, his testimony strongly suggests he had only limited ability to either understand the questions or meaningfully respond to them. There may have been other instances where had he had the assistance of an interpreter, he might have been able to assist his attorney in specific, tangible ways. Should the trial court find Khan's language skills were such that he was entitled to the assistance of an interpreter, it shall also determine whether there is a reasonable probability that but for counsel's errors, the result of the trial would have been different.

(*Id.*, Ex. 35 at 12-13 (citations omitted).)

Four dissenting justices concluded that Petitioner was not entitled to a reference hearing on his ineffective assistance of counsel claim because he had not submitted with his petition sufficient evidence regarding his language abilities to warrant such a hearing, and because he failed to prove that he was prejudiced by the lack of an interpreter at his trial. (*Id.*, Ex. 35 at 20-26.)

Following remand, a reference hearing was held in Skagit County Superior Court before Judge David Svaren. (*See id.*, Exs. 36-38.) Petitioner was represented at the reference hearing by attorney Amy Muth[2], and a state certified Urdu interpreter was present for the duration of the hearing. (*See id.*) Petitioner did not testify at the hearing, but he called three witnesses to testify

---

[2] While Ms. Muth represented Petitioner at the reference hearing, Petitioner's personal restraint petition was filed and originally litigated by Jeffrey Ellis, the same attorney who is representing Petitioner in this federal habeas action. (*See* Dkt. # 10, Exs. 18, 20, 21, 25, 27, 29, 31.)

REPORT AND RECOMMENDATION
PAGE - 10

on his behalf: Kelly Anderson, an adult basic education teacher who was Petitioner's GED instructor at SCCC; Jay Stansell, an experienced public defender with particular expertise in working with clients whose native language is not English; and, Dr. Robert Leonard, a linguistics professor at Hofstra University. (*Id.*, Exs. 36-37.) Only Ms. Anderson had ever spoken or interacted with Petitioner. (*See id.*, Ex. 39 at 1-2.) Mr. Stansell and Dr. Leonard offered their opinions based solely on their review of the trial transcript. (*See id.*)

The State called five witnesses at the hearing, including three individuals who had critical roles at Petitioner's trial: Lennard Nahajski, Petitioner's trial counsel; Cynthia Larsen, a former Snohomish County Deputy Prosecutor who prosecuted Petitioner's case on behalf of Snohomish County; and, Kenneth Cowsert, the Snohomish County Superior Court Judge, now retired, who presided over Petitioner's trial. (*Id.*, Ex. 37.) The State also called as witnesses Steve Martin, the detective who investigated the crimes alleged against Petitioner and interviewed Petitioner following his arrest, and Terry Bloss, a jail classification counselor at the Snohomish County Jail who conducted an intake interview with Petitioner when he was booked into jail. (*Id.*, Ex. 37.)

After hearing the testimony of these eight witnesses, reviewing the transcript of Petitioner's trial and sentencing hearing, and considering the decision rendered by the Washington Supreme Court which led to the remand, Judge Svaren issued a memorandum decision that summarized the testimony of the witnesses as relevant to Petitioner's ability to understand and communicate in English and explained the court's findings and conclusions. (*Id.*, Ex. 39.) In particular, with respect to the issue of whether Petitioner's constitutional right to an interpreter had been violated, Judge Svaren concluded it had not, and he explained the court's findings as follows:

REPORT AND RECOMMENDATION
PAGE - 11

This Court was charged with determining whether Mr. Khan's "constitutional or statutory rights were violated by the lack of an interpreter and whether any such violation caused him the requisite prejudice for collateral relief." Based upon the evidence submitted, the court finds that Defendant was readily able to understand and be understood by his trial counsel. The court further finds that counsel met with Defendant numerous times prior to trial during which they had meaningful discussions regarding witnesses and trial strategy. During trial Defendant was able to readily comprehend the questions that were asked of him and was further able to make himself understood when testifying. Any confusion over the term "erection" appeared to stem from defendant's persistent denial that he had been in the presence of the children while in an erect state rather than from any misunderstanding of the meaning of the word. In any event, this "confusion" was clarified on re-direct. In his report, Dr. Leonard [the linguist] notes a cultural aversion to discussing sex openly and this is certainly evident in his use of the term "this thing" to variously refer to the claim that he had an erection in the presence of children, the allegation that he had molested his stepdaughter, and the charges pending against him. The Court does not find that Defendant's use of the term "this thing" when testifying denotes a lack of English proficiency. Nor does the court find that Mr. Khan's limited requests for clarification during examination reflect a lack of understanding as they were often preceded by an inartful question or term susceptible of two meanings. For instance, when the prosecutor asked if Mr. Khan cursed his mother-in-law during an argument she was referring to the more obscure meaning of placing a hex rather than the more common meaning of "to swear at."

. . . .

Mr. Khan . . . was capable of making himself understood and seemed to readily comprehend questions put to him. He, also, was able to clearly express his defense. The Court finds no constitutional violation.

(*Id.*, Ex. 39 at 3-4.)

Judge Svaren went on to address Petitioner's statutory right to an interpreter. The court explained that the statutory right to an interpreter, as set forth in RCW 2.43.010, was more extensive than the constitutional right to an interpreter, and protected the rights of persons "unable to readily understand or communicate in the English language due to a non-English speaking cultural background." (*Id.*, Ex. 39 at 4.) The court then explained its conclusion that Petitioner's statutory right to an interpreter had, in fact, been violated:

REPORT AND RECOMMENDATION
PAGE - 12

> While the record and witness testimony reflects that Mr. Khan was able to readily understand English, he spoke in broken English and sometimes strained to find the right word or words to express himself. The testimony of both Dr. Leonard and Ms. Anderson place Defendant's English speaking proficiency at a grade school level. While Defendant was able to make himself understood and present his defense, that ability does not equate to being readily able to speak the English language.

(*Id.*, Ex. 39 at 4.)

Finally, Judge Svaren addressed the issue of prejudice in accordance with the Washington Supreme Court's directive on remand:

> Defendant argues that he was prejudiced because "testifying is a fundamental constitutional right" that was violated due to his limited ability to speak English. This is a very general statement that is not supported by the evidence. Defendant has not identified a single instance where he would [have] done anything differently had there been an interpreter. As noted by the Khan court, Defendant "simply has not shown that, even assuming counsel was deficient in failing to secure an interpreter "'there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different.'" (citations omitted). Khan, supra at 688. Instead, Defendant has presented his arguments with the same level of abstraction noted by the Supreme Court "rather than drilling down into how the lack of an interpreter caused him prejudice by demonstrating what specifically he would have done differently. . . ." Khan at 692. Defendant has not successfully established a reasonable probability that but for counsel's errors, the result of the trial would have been different. Accordingly, the Court finds no prejudice.

(*Id.*, Ex. 39 at 4-5.)

The superior court thereafter entered findings of fact, conclusions of law, and an order denying Petitioner's personal restraint petition, consistent with Judge Svaren's memorandum decision. (*Id.*, Ex. 40.) The court specifically set forth the following five findings of fact:

1. Prior to and during trial, the defendant was readily able to understand and be understood by his trial counsel.

2. During trial, the defendant was able to readily comprehend the questions that were asked of him and make himself understood while testifying.

REPORT AND RECOMMENDATION
PAGE - 13

3.  During trial, the defendant spoke in broken English and sometimes strained to find the right word or words to express himself. He was nonetheless able to clearly express his defense.

4.  The defendant has not established that he would have done anything differently at trial if an interpreter had been provided.

5.  There is no reasonable probability that the result of the trial would have been different if the defendant had been provided an interpreter. This court's confidence in the outcome has not been undermined.

(*Id.*, Ex. 40 at 1.)

The superior court went on to set forth the following three conclusions of law:

1.  A defendant has a constitutional right to an interpreter if he is incapable of comprehending questions or of making himself understood in English. Since the defendant in this case was capable of doing those things, his constitutional right to an interpreter was not violated.

2.  Under RCW 2.43.010, a defendant has a statutory right to an interpreter if he cannot readily understand or communicate in the English language due to a non-English-speaking cultural background. "Readily" means "in a ready manner" or "without much difficulty." Since the defendant spoke in broken English and sometimes strained to find the right word or words to express himself, he had a statutory right to an interpreter.

3.  To establish prejudice from the lack of an interpreter, the defendant must establish a reasonable probability that the outcome of the trial [would] have been different if an interpreter was provided. Since no such probability exists, the defendant has failed to establish prejudice.

(*Id.*, Ex. 40 at 2-3.)

Petitioner appealed the superior court's order to the Washington Court of Appeals, challenging four of the superior court's findings of fact (findings of fact 1, 2, 4 and 5), and arguing that the superior court erred in denying his personal restraint petition. (*Id.*, Ex. 41 at 5-6.) The court of appeals rejected Petitioner's claims, concluding that the superior court's findings

REPORT AND RECOMMENDATION
PAGE - 14

were supported by substantial evidence and affirming the denial of Petitioner's personal restraint

petition. (*Id.*, Ex. 44.) The court of appeals explained its conclusion as follows:

> Khan challenges finding of fact 5 that states, "There is no reasonable probability that the result of the trial would have been different if the defendant had been provided an interpreter." Khan contends that the evidence at the reference hearing shows "[i]t is reasonably probable that the jury's assessment of Khan's credibility at trial rested in significant part on the language barrier" and "[t]hat fact alone undermines confidence in the outcome and requires reversal." We disagree.
>
> First, finding of fact 3 states that Khan "spoke in broken English and sometimes strained to find the right word or words to express himself" but "was nonetheless able to clearly express his defense." Khan does not challenge this finding and it is therefore a verity on appeal. Second, substantial evidence supports the finding that Khan did not show prejudice. None of Khan's witnesses at the reference hearing, with the exception of one, had ever met or spoken with him. Attorney Stansell and linguistics professor Dr. Leonard based their opinion of Khan's communication abilities entirely on the written record of the trial. But there are a host of factors that are impossible to capture in a transcript, such as facial expressions, gestures, demeanor, body language, and tone of voice. In contrast, Khan's defense counsel, the prosecutor, and the trial judge witnessed Khan testify and spent significant time interacting with Khan in person. And all three agreed that Khan was able to understand the questions put to him and communicate his defense to the jury. The superior court found their testimony more relevant and credible than that of Stansell and Dr. Leonard. We defer to the trier of fact to weigh conflicting testimony and the credibility of witnesses, and accordingly we do not disturb its findings.

(*Id.*, Ex. 44 at 14-15.)

The court of appeals went on to review a portion of Petitioner's cross-examination, that

concerning whether Petitioner had an erection in the presence of his children, which was

highlighted throughout Petitioner's state court proceedings as an example of Petitioner being

misunderstood to his detriment as a result of not being afforded an interpreter:

> It was clear from the testimony that Khan understood what an erection was. Defense counsel was the first to raise the issue, asking if Khan had an erection while in the loft area. Khan said, "She is my daughter. I don't even think this way." Though Khan answered "[n]ever" when the prosecutor asked if he had ever had an erection, Khan immediately clarified that he meant he had never had an

REPORT AND RECOMMENDATION
PAGE - 15

erection in front of his children by stating, "Look at this, this is my family. Okay, front of my kids, what I'm showing this kind of thing? I am respectable person." Further, on redirect, Khan testified, "I mean not front of kids. . . . [W]henever I do, inside my room." None of the other grammar or word choice errors identified by Dr. Leonard had any impact on the jury's ability to understand Khan. Khan has not shown a substantial possibility that had he been provided an interpreter, the jury would have acquitted him of the charges.

(*Id.*, Ex. 44 at 16.)

Petitioner here challenges the state court's conclusion that he was not prejudiced by his trial counsel's failure to request an interpreter on two grounds. (Dkt. # 13.) First, Petitioner argues that the state court's conclusion was unreasonable because the court failed to consider whether Petitioner's credibility was injured because of his lack of proficiency with the English language. (*See id.* at 2, 7.) Second, Petitioner argues that his evidentiary hearing counsel was deficient for failing to show specifically what Petitioner would have done differently had he been able to express himself fluently. (*Id.* at 2, 8.)

Petitioner's argument that the state courts unreasonably failed to consider whether his credibility was injured because of his lack of proficiency with English is undermined by the record. The primary argument advanced by Petitioner at the reference hearing in support of his claim that he was prejudiced by the lack of an interpreter at trial was that his lack of proficiency in English caused him to appear evasive in his testimony and, thus, to be less credible. (*See* Dkt. # 10, Ex. 36 at 4-7 and Ex. 38 at 14-19.)

This argument was supported, in particular, by the testimony of Jay Stansell who identified numerous instances at trial where Petitioner had difficulties understanding questions and articulating answers, and suggested that these difficulties made Petitioner seem evasive. (*See id.*, Ex. 36 at 77-78, 86-96.) Mr. Stansell opined that Petitioner likely would not have been treated as a credible witness given his inability to explain himself. (*See id.*, Ex. 36 at 87-94, 96,

REPORT AND RECOMMENDATION

PAGE - 16

112-13.) Judge Svaren, in his memorandum decision, acknowledged Mr. Stansell's testimony on these points, but also noted Mr. Stansell's concession on cross-examination "that his conclusion about the jurors' evaluation of Defendant's credibility was speculative." (*Id.*, Ex. 39 at 2.)

The Washington Court of Appeals, on review of the superior court's decision, also acknowledged Mr. Stansell's testimony and deferred to the superior court's conclusion that the testimony was not as relevant and credible as other witnesses who had observed and interacted with Petitioner at trial, including Petitioner's defense counsel, the prosecutor, and the trial judge, all of whom agreed that Petitioner was able to understand the questions put to him and communicate his defense to the jury. (*Id.*, Ex. 44 at 8, 15.)

The record makes clear that both the superior court and the court of appeals evaluated Petitioner's claim of prejudice under the applicable *Strickland* standard based on an extensive record. Petitioner fails to demonstrate that the state court's application of the *Strickland* standard was erroneous or that it was unreasonable for the court of appeals to have concluded that Petitioner did not establish prejudice under that standard. That Petitioner disagrees with the state court's conclusion on the issue of prejudice is simply not sufficient to entitle him to relief.

Petitioner next argues that if this Court finds the state court record contains insufficient evidence of prejudice, it should consider whether that is due to reference hearing counsel's failure to do what the state supreme court proscribed when it remanded the case for a hearing, which was to show specifically what Petitioner would have done differently had he understood the proceedings or questions.[3] (*See id.* at 2, 8.) Petitioner suggests that the way for post-

---

[3] The Court notes that it is not the role of this Court on federal habeas review to independently determine whether or not the state court record contains sufficient evidence of prejudice. Rather, the question for this Court is whether the state court reasonably concluded that there was insufficient evidence of prejudice to support Petitioner's ineffective

conviction counsel to have made the necessary showing would have been for her to have called Petitioner to testify at the reference hearing. (*See* Dkt. # 1 at 11.) Petitioner asserts that if he had been called to testify, he could have "explained his lack of fluency in English, both in terms of his difficulties in understanding and in speaking precisely." (*Id*.) Petitioner claims that because counsel failed to call him, evidence of his limited proficiency was not before the post-conviction court resulting in an inaccurate impression of his degree of proficiency in English. (*Id*.; *see also* Dkt. # 13 at 2.)

Petitioner submitted in conjunction with his response to Respondent's answer a sworn declaration which, he suggests, corrects the deficiencies in the state court record and demonstrates that his credibility was undermined by the failure to provide an interpreter. (*See* Dkt. # 13 at 2, 12-14.) As noted above, this Court's review under § 2254 for claims adjudicated in the state courts is limited to the record that was before the state courts. *See Pinholster*, 563 U.S. at 181-82. Petitioner's recent declaration was clearly not before the state courts and is therefore not properly before this Court for consideration of Petitioner's ineffective assistance of trial counsel claim. In an apparent attempt to circumvent the *Pinholster* limitation, Petitioner indicates that he offers this additional proof in support of his ineffective assistance of trial counsel claim pursuant to the procedural default exception recognized in *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Trevino v. Thaler*, 569 U.S. 413 (2013).

The Supreme Court, in *Martinez*, announced a limited qualification to the holding in *Coleman v. Thompson*, 501 U.S. 722 (1991), that an attorney's ignorance or inadvertence in a post-conviction proceeding does not establish cause which excuses procedural default. *Martinez*,

---

assistance of trial counsel claim under *Strickland*. As explained above, this Court concludes that the state court did, in fact, reasonably determine there was insufficient evidence of prejudice.

REPORT AND RECOMMENDATION
PAGE - 18

566 U.S. at 9. The narrow exception recognized in *Martinez* is that the absence of counsel, or the inadequate assistance of counsel, in an initial-review collateral proceeding may establish cause for a claim of ineffective assistance of counsel at trial. *See id*. at 14.

Respondent observes in his answer to Petitioner's petition that he has not argued Petitioner's ineffective assistance of trial counsel claim is procedurally barred, the only context in which *Martinez* would apply. (*See* Dkt. # 9 at 21.) In fact, as noted above, Respondent concedes that Petitioner properly exhausted the claim by presenting it to the Washington Supreme Court in his personal restraint proceedings. Petitioner asserts, however, that his properly exhausted ineffective assistance of trial counsel claim was adjudicated on an inadequate record as a result of post-conviction counsel's ineffectiveness, and he suggests that because he has "substantially improved" the "evidentiary posture" of his ineffective assistance of trial counsel claim in this proceeding, *Martinez* provides a pathway to consideration of his newly enhanced ineffective assistance of counsel claim. (*See* Dkt. # 13 at 9-10.) Petitioner relies on the Ninth Circuit's decision in *Dickens v. Ryan*, 740 F.3d 1302 (9th Cir. 2014), to support this argument, though such reliance is misplaced.

In *Dickens*, the petitioner's state post-conviction counsel identified an ineffective assistance of sentencing counsel claim in proceedings before the state courts which was devoid of specific factual allegations or evidentiary support, and the claim was denied. *See id*. at 1317-19. The petitioner subsequently filed a federal habeas petition in which he changed the claim to include extensive new factual allegations and evidence. *See id*. at 1317. The state argued that the petitioner had procedurally defaulted on any claim based on the new allegations by failing to present the allegations and evidence to the state courts. *Id*. The district court agreed that the claim was procedurally defaulted, noting that the petitioner's new allegations and evidence

REPORT AND RECOMMENDATION
PAGE - 19

fundamentally altered his previously exhausted ineffective assistance of counsel claim rendering it procedurally defaulted. *Id*.

The Ninth Circuit agreed that the petitioner in *Dickens* had failed to exhaust his new ineffective assistance of counsel claim. The Ninth Circuit explained that "[a] claim has not been fairly presented in state court if new factual allegations either fundamentally alter the legal claim already considered by the state courts, or place the case in a significantly different and stronger evidentiary posture than it was when the state courts considered it." *Id*. at 1318 (internal quotations and citations omitted). The Ninth Circuit concluded that the petitioner's newly enhanced *Strickland* claim was procedurally barred. *Id*. at 1319. The Ninth Circuit then remanded the case to the district court for consideration of whether petitioner's ineffective assistance of post-conviction counsel claim was sufficient to overcome the procedural default of the petitioner's newly enhanced ineffective assistance of sentencing counsel claim under *Martinez*.

*Dickens* is distinguishable from this case because, as previously noted, Respondent has *not* argued that Petitioner's underlying ineffective assistance of trial counsel claim is procedurally defaulted as the state did in *Dickens*. While Petitioner glosses over this fact, it is indeed relevant to the applicability of *Martinez*. Moreover, the "new facts" alleged in Petitioner's most recent declaration do not fundamentally alter Petitioner's underlying ineffective assistance of trial counsel claim or place the claim in a significantly different or stronger evidentiary posture than when the state courts considered it.

In *Dickens*, the new facts alleged and the new evidence submitted by the petitioner created a substantially different claim. The same cannot be said here. Petitioner's declaration essentially focuses on Petitioner's lack of fluency and his cross-examination about whether he

REPORT AND RECOMMENDATION
PAGE - 20

had an erection in the presence of his children. These issues were explored in depth at

Petitioner's reference hearing, and the superior court determined there was no prejudice. The

only thing "new" about the facts is that they come directly from Petitioner rather than being

offered through other witnesses at the hearing. The Court concurs with Respondent that

Petitioner's recent declaration adds nothing of substance to the record and does nothing to cast

doubt on the thoroughness of the reference hearing or on the reasonableness of the court of

appeals' adjudication of Petitioner's ineffective assistance of trial counsel claim.

For the foregoing reasons, there is no procedural default to overcome in this case

rendering *Martinez* inapplicable here. Thus, Petitioner's argument that this Court should consider

whether the lack of sufficient evidence in the record to establish prejudice related to trial

counsel's failure to request an interpreter is attributable to post-conviction counsel's deficient

performance necessarily fails.[4]

### C.    Certificate of Appealability

A petitioner seeking post-conviction relief under § 2254 may appeal a district court's

dismissal of his federal habeas petition only after obtaining a certificate of appealability from a

district or circuit judge. A certificate of appealability may issue only where a petitioner has made

"a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(3). A

petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the

district court's resolution of his constitutional claims or that jurists could conclude the issues

---

[4] The Court observes that though the question of whether reference hearing counsel's performance was deficient is not an issue this Court need resolve, the record suggests there are valid strategic reasons counsel would not have called Petitioner as a witness at the hearing, not the least of which is that Petitioner's trial counsel, in his reference hearing testimony, rebutted many of the statements Petitioner made in the declaration he submitted in support of his personal restraint petition. It seems highly likely that Petitioner's counsel, Ms. Muth, would have been disinclined to subject Petitioner to cross-examination at the hearing given his apparent lack of veracity in his original declaration.

REPORT AND RECOMMENDATION
PAGE - 21

presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Under this standard, this Court concludes that petitioner is not entitled to a certificate of appealability.

## VI.    CONCLUSION

Based on the foregoing, this Court recommends that Petitioner's petition for writ of habeas corpus be denied and this action be dismissed with prejudice. This Court also recommends that a certificate of appealability be denied. A proposed order accompanies this Report and Recommendation.

## VII.    OBJECTIONS

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14) days** after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **September 4, 2020**.

DATED this 10th day of August, 2020.


MICHELLE L. PETERSON
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 22